# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| MELANIE ANN GINGERICH-GOSHORN, ) </br> ) </br> Plaintiff, ) </br> ) </br> v. ) </br> ) </br> NANCY A. BERRYHILL, ACTING ) </br> COMMISSIONER OF THE SOCIAL ) </br> SECURITY ADMINISTRATION, ) </br> ) </br> Defendant. ) | CAUSE NO.: 1:17-CV-428-TLS |

## OPINION AND ORDER

Plaintiff Melanie Ann Gingerich-Goshorn seeks review of the final decision of the Commissioner of the Social Security Administration (Commissioner) denying her disability and disability insurance benefits. The Plaintiff argues that the Commissioner wrongfully denied her Social Security benefits and erred by failing to adequately consider her impairments in the aggregate in determining her limitations in concentration, persistence, and pace, and by failing to support the step five analysis regarding the number of jobs in the economy that the Plaintiff can perform with substantial evidence.

## BACKGROUND

On July 29, 2014, the Plaintiff filed a Title II application for disability and disability insurance benefits, alleging disability beginning February 28, 2013. (R. 11.) Her claims were denied initially on December 3, 2014, and upon reconsideration on February 28, 2013. (*Id.*) On August 3, 2016, the Plaintiff appeared with counsel and testified at a hearing before an administrative law judge (ALJ). (*Id.*) Scott B. Silver, an impartial vocational expert (VE), also

appeared. (*Id.*) On August 16, 2017, the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied the Plaintiff's request for review. (R. 1–4.)

On October 12, 2017, the Plaintiff filed this claim in federal court against the Acting Commissioner of the Social Security Administration.

## THE ALJ'S FINDINGS

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but also any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. § 423(d)(2)(A).

An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits. 20 C.F.R. § 404.1520. The first step is to determine whether the claimant no longer engages in substantial gainful activity (SGA). *Id.* In the case at hand, the ALJ found that the Plaintiff has not engaged in SGA since her alleged onset date, February 28, 2013, through her date last insured, June 30, 2015. (R. 11.)

In step two, the ALJ determines whether the claimant has a severe impairment limiting her ability to do basic work activities under § 404.1520(c). In this case, the ALJ determined that the Plaintiff had multiple severe impairments, including degenerative disc disease of the lumbar, thoracic, and cervical spine; chronic pain disorder; COPD; depressive disorder with psychotic features; PTSD; ADHD; and generalized anxiety disorder. (R. 13.) The ALJ found that these

impairments caused more than minimal limitations in the Plaintiff's ability to perform the basic mental and physical demands of work. (*Id.*) The ALJ also found that the Plaintiff had multiple non-severe impairments, including a heart murmur, acid reflux and gastritis, hypertension, and headaches. (R. 14.) The ALJ also noted that the impairments of hiatal hernia, left carpal tunnel syndrome, and a history of kidney stones and urinary incontinence were not reflected in the record during the relevant time period. (*Id.*)

Step three requires the ALJ to "consider the medical severity of [the] impairment" to determine whether the impairment "meets or equals one of [the] listings in appendix 1 . . . ." § 404.1520(a)(4)(iii). If a claimant's impairment(s), considered singly or in combination with other impairments, rise to this level, there is a presumption of disability "without considering [the claimant's] age, education, and work experience." § 404.1520(d). But, if the impairment(s), either singly or in combination, fall short, the ALJ must proceed to step four and examine the claimant's "residual functional capacity" (RFC)—the types of things she can still do physically, despite her limitations—to determine whether she can perform "past relevant work," § 404.1520(a)(4)(iv), or whether the claimant can "make an adjustment to other work" given the claimant's "age, education, and work experience." § 404.1520(a)(4)(v).

The ALJ found that the Plaintiff had a mild restriction in activities of daily living, moderate difficulties with social functioning, and moderate difficulties with regard to concentration, persistence, and pace. (R. 15–16.) However, the ALJ determined that the Plaintiff's impairments did not meet or equal any of the listings in Appendix 1 and that she had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) except that:

> [S]he could occasionally climb ramps and stairs; never climb ladders, ropes or scaffolds; and occasionally balance, stoop, kneel, crouch and crawl. The claimant should have avoided concentrated exposure to fumes, odors, dusts, gases and other similar respiratory irritants. The claimant was able to understand, remember and

carry out simple instructions and tasks, make judgments on simple work-related decisions, and respond appropriately to occasional and superficial interactions with coworkers and supervisors. The claimant should have avoided work activity involving the public, she was able to respond appropriately to usual work situations, and she could deal with routine changes in a routine work setting[.]

(R. 16–17.)

After analyzing the record, the ALJ concluded that the Plaintiff was not disabled as of her alleged onset date. The ALJ evaluated the objective medical evidence and the Plaintiff's subjective complaints and found that the Plaintiff's medically determinable impairments "could reasonably be expected to cause some of the alleged symptoms." (R. 18.) But, the ALJ found that the Plaintiff's testimony and prior statements regarding the intensity, persistence, and limiting effects of these symptoms "were not entirely consistent with the medical evidence and other evidence in the record." (*Id.*)

The Plaintiff has past relevant work as a short order cook, which is light, semiskilled work. (R. 22.) The ALJ found that the Plaintiff is unable to perform past relevant work. (*Id.*) Relying on the VE's testimony, the ALJ determined that "considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed." (R. 23.) Thus, the ALJ found that the Plaintiff was not disabled as defined in the Social Security Act as of her alleged onset date through her date last insured. (R. 24.)

## STANDARD OF REVIEW

The decision of the ALJ is the final decision of the Commissioner when the Appeals Council denies a request for review. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009). The Social Security Act establishes that the Commissioner's findings as to any fact are conclusive if

supported by substantial evidence. *See Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995). Thus, the Court will affirm the Commissioner's finding of fact and denial of disability benefits if substantial evidence supports them. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2009). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Richardson*, 402 U.S. at 399–400. The reviewing court reviews the entire record; however it does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *See Diaz*, 55 F.3d at 308. A court will "conduct a critical review of the evidence," considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision, and "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (internal quotations omitted).

When an ALJ recommends the denial of benefits, the ALJ must first "provide a logical bridge between the evidence and [her] conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009) (internal quotation marks and citation omitted). Though the ALJ is not required to address every piece of evidence or testimony presented, "as with any well-reasoned decision, the ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). However, if substantial evidence supports the ALJ's determination, the decision must be

affirmed even if "reasonable minds could differ concerning whether [the claimant] is disabled." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

## ANALYSIS

The Plaintiff asserts that the ALJ did not adequately consider her impairments in the aggregate in determining her limitations in concentration persistence and pace. The Plaintiff also argues that the ALJ's decision is not supported by substantial evidence because the ALJ relied on the VE's testimony without confirming its reliability.

"A finding based on unreliable VE testimony is equivalent to a finding that is not supported by substantial evidence and must be vacated." *Britton v. Astrue*, 521 F.3d 799, 803 (7th Cir. 2008). The Plaintiff takes issue with the method by which the VE determined the number of jobs in the national economy that she could perform given her age, education, work experience, and residual functional capacity. In this case, the VE used the Office of Employment Statistics (OES)/Standard Occupational Classification (SOC) categories. Each of these categories encompass multiple Dictionary of Occupational Titles (DOT) job categories and multiple levels of exertion. Therefore, the national job numbers presented by the VE were not specific to a particular DOT job category. Rather, a VE typically divides the total number of jobs in the broader category by the number of DOT job titles in that category, known as the equal distribution method. According to the Plaintiff, this means that "the numbers were a mere fabrication, lacked proper evidentiary foundation, and cannot be meaningfully reviewed." (*See* Pl.'s Br. 16, ECF No. 20.) In support, the Plaintiff cites *Alaura v. Colvin*, 797 F.3d 503, 507–08 (7th Cir. 2015) and *Browning v. Colvin*, 766 F.3d 702 (7th Cir. 2014) in which the Seventh Circuit expressed doubt as to rationality of this method.

The Commissioner responds that the Seventh Circuit's discussions regarding the equal distribution method in *Alaura* and *Browning* are nothing more than dicta. Indeed, courts in this Circuit have acknowledged as much. *See, e.g.*, *Kohlhaas v. Berryhill*, No. 17-cv-413, 2018 WL 1090311, at *4 (S.D. Ill. Feb. 28, 2018). The Commissioner argues that the ALJ properly questioned the VE on the reliability of his methodology and that, while there are imperfections in the system of approximation, there is no better way for obtaining the data. (*See* Comm'r Resp. Br. 10–11, ECF No. 21.) Moreover, the Commissioner asserts that, despite its criticisms, if the Seventh Circuit had meant to overturn the current framework for estimating national job numbers, it would have explicitly done so. (*Id.* at 11.)

The Seventh Circuit's recent decision in *Chavez v. Berryhill*, 895 F.3d 962 (7th Cir. 2018), is instructive. The Seventh Circuit began its discussion of the issue by reiterating the substantial evidence standard: "In the context of job-number estimates . . . the substantial evidence standard requires the ALJ to ensure that the approximation is the product of a reliable method." 895 F.3d at 968 (citing *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002)).

"Establishing the reliability of a job-number estimate does not require meeting an overly exacting standard." *Id.* Importantly, the Seventh Circuit acknowledged that "[a] VE's estimate will be just that— an estimate." *Id.* "VEs are neither required nor expected to administer their own surveys of employers to obtain a precise count of the number of positions that exist at a moment in time for a specific job." *Id.* Neither approximation nor uncertainty can be totally avoided under these circumstances. *Id.* Nor do the social security regulations require a "precise count of job number"; and acquiring the necessary data to make such a tally would be exceedingly difficult, if not impossible. *Id.* "But any method that the agency uses to estimate job numbers must be supported with evidence sufficient to provide some modicum of confidence in

7

its reliability." *Id.* at 969. The Seventh Circuit reiterated its previous concern about the equal distribution method "that the method rests on an assumption about the relative distribution of jobs within a broader grouping that lacks any empirical footing." *Id.* (collecting cases).

The Seventh Circuit then turned to the record and found that "all the record shows is that the VE preferred the job-number estimates produced by the equal distribution method over those from the occupational density method." *Id.* However, "[w]hat [was] entirely lacking [was] any testimony from the VE explaining why he had a reasonable degree of confidence in his estimates." *Id.* The Seventh Circuit provided examples: the VE "could have drawn on his past experience with the equal distribution method, knowledge of national or local job markets, or practical learning from assisting people with locating jobs throughout the regions, to offer an informed view on the reasonableness of his estimates." *Id.* But, the VE did not give any such testimony. Rather, "[t]he colloquy concluded with the VE stating that his confidence in estimates generated from the equal distribution method was not rooted in surveys or job data, but rather more generally 'based on [his] experience as well as consultation with other experts throughout the country.'" *Id.* at 967. This "left the ALJ without any reasoned and principled basis for accepting the job-number estimates." *Id.* at 969.

After review of the transcript of the hearing before the ALJ, the Seventh Circuit was left with "the conviction that the VE mechanically relied on outdated sources to estimate job numbers, without bringing any aspect of his extensive experience to bear on the reality of those numbers." *Id.* at 970. Thus, the Seventh Circuit found that the ALJ's decision was not supported by substantial evidence because of the unreliability of the VE's job-number estimate, and the Seventh Circuit found that this reason alone was sufficient to require remand. *Id.*

Turning to the instant case, the Court finds that the ALJ likewise did not sufficiently confirm the reliability of the VE's testimony, and, therefore, her decision was not supported by substantial evidence. During the hearing before the ALJ, the VE identified examples of jobs that the Plaintiff could perform, including a collator, an unskilled SVP2 job, with there being 464,000 jobs nationwide. Counsel for the Plaintiff asked the VE how he derived the job numbers for the DOT categories (i.e. collators) from the broader OES/SOC categories (i.e., inspectors, resters, sorters, and weighers). (R. 99–101.) The VE testified that he worked "strictly with the Department of Labor Statistical Data," and that he "ha[d] the algorithms or [he was] strictly using the data that you can reproduce yourself." (R. 101.) Counsel pressed further for clarification as to how the VE went "from a bigger universe to a smaller universe," to which the VE responded: "Actually, I'm not going to a smaller universe. The bottom line is that I'm giving you aggregated numbers. The Department of Labor does not attach specific statistical numbers per each DOT code. They just don't. They aggregate the data." (*Id.*) Counsel and the ALJ both continued to press for information regarding the number of collator jobs, and the VE clarified that there were not 464,000 collator jobs, but rather, there were 464,000 inspectors, resters, sorters, and weighers jobs, in the aggregate.[1] (R. 101–02.) Counsel also questioned the VE regarding whether the other jobs referenced as being within the OES categories were of the same exertional level as the collator. (R. 103–04.) The VE responded that the 464,000 jobs included those performed at all exertional levels. (R. 104.)

---

[1] The VE also noted that counsel was "certainly welcome to call the gentleman I work with for client specialist if he wants more detailed information and they would certainly talk to him and tell him how we—you know, in terms of what the data looks like." (R. 103.) The Court finds this suggestion troublesome as it is the Agency's burden of proof at the step five determination, and when an ALJ relies on a VE's testimony to make this determination, that VE should be able to sufficiently back up his opinions and explain his methodology.

After finishing his questions for the VE, Counsel voiced his objection to the VE's testimony on the basis of insufficient foundation. (*Id.*) The ALJ confirmed with the VE that the VE's testimony was that there was "something less than 464,000 collators in the nation." (*Id.*) The ALJ then asked the VE how many fewer collators there were, to which the VE responded:

> Can't tell you. They just aggregate and again, I would have to call every employer in the United States. I'm relying on strictly the U.S. Department of Labor's information as given to me and is reproducible by anybody who wants to go and look at the statistics. They are publicly available.

(*Id.*)

The ALJ continued questioning the VE and eventually stated:

> Okay, and I want to make it very clear. Again, tell me the source of the—the statistical source of the information that you reviewed in formulating your response as per the hearing testimony today. Specifically . . . the step five analysis with respect to the description of the jobs . . . that you articulated to me.

(R. 107.) The VE responded:

> Sure. And again, I'm using the national album protections from the U.S. Department of Labor. Under the database codes, which is the North American Industrial Classification System, and I'm also using the SOC, which is the Standard Occupational Classification of Jobs. In addition, to the aggregated numbers provided by the Bureau of Labor Statistics.

(*Id.*) The ALJ asked the VE about the availability of the information on which the VE relied, to which the VE replied that:

> [B]asically anybody can access these, the statistical data. The only difference in terms of my software is that it puts it all in one place so that I can just push a button and bring it up . . . That's the only difference, but it is basically a data mining program that works directly within the Bureau of Labor Statistics and enables me to get more ready information in terms of specific kinds of jobs.

(R. 108.)

The VE's testimony in this case falls even further short of the substantial evidence standard than the VE's testimony in *Chavez*. In *Chavez*, the VE testified based in part on his

10

"experience" and on his "consultation with other experts throughout the country." In this case, the VE did not rely on such support, much less the types of support identified by the Seventh Circuit as potentially sufficient, such as his knowledge of national and local job markets or his practical experience helping people to find jobs. Instead, the VE made quite clear that his opinion was based solely on statistical data that is publically available, that he did not deviate from these sources, and that his conclusion was reproducible by anybody who chose to access the information regardless of their expertise. Indeed, the only difference between him and a lay person was that he had software that put all of the information in one place and so allowed him to review the data more efficiently. Like the Seventh Circuit in *Chavez*, the Court is left with the conviction that the VE mechanically relied on outdated sources to estimate job numbers, without bringing any aspect of his extensive experience to bear on the reality of those numbers.

## CONCLUSION

Accordingly, the Court REVERSES and REMANDS this case. Because the Court is remanding on this issue, it need not consider the remainder of the parties' arguments.

SO ORDERED on August 23, 2018.

    s/ Theresa L. Springmann
CHIEF JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT